# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERIC D. HOLDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-CV-657-PJC |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Claimant, Eric D. Holden ("Holden") pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") under the Social Security Act, 42 U.S.C. §§ 401 *et seq*. denying Holden's claim for child disability benefits. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Holden appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Holden was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### Claimant's Background

Holden was 19 years old at the time of the hearing before the ALJ on August 20, 2009. (R. 19). He testified that he graduated from high school in 2008. (R. 20). He explained that he had not looked for a job because he had limited vision in his left eye. *Id.* He could read, but if the type was very small, it would take him longer. (R. 23-24). Holden described problems he

had complying with instructions in a junior ROTC program at his high school. (R. 22). He had been in a vocational education program in robotics and industrial electronics, and he had difficulty keeping up compared to other students. (R. 22-24). He had been in special education classes. (R. 24). He had been in mental health counseling and was attending a rehabilitation or therapy group from 8 a.m. to 3 p.m. three days a week. (R. 24-25). Holden testified that he did not have a permit or a driver's license, and that he did not attempt to drive. (R. 26-27). He testified that his poor eyesight made him nervous to attempt to obtain a driver's license. *Id.*

At the hearing before the ALJ, Holden's mother testified that Holden found it difficult to stay on task. (R. 29-30).

Records from Parkside Psychiatric Hospital & Clinic ("Parkside") include an admission assessment dated January 27, 2005. (R. 229-30, 232-49). Holden's Axis I[1] diagnoses were attention deficit hyperactivity disorder ("ADHD"), predominantly inattentive; anxiety disorder not otherwise specified; and parent child relationship problem. (R. 249). His current Global Assessment of Functioning ("GAF")[2] was scored as 50. *Id.* Holden was seen at Parkside for outpatient counseling in 2005 and was discharged on February 18, 2006 for noncompliance with

---

[1]The multiaxial system "facilitates comprehensive and systematic evaluation." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000) (hereafter "DSM-IV").

[2]The GAF score represents Axis V of a Multiaxial Assessment system. DSM-IV at 32-36. A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning." *Id*. at 32. The GAF scale is from 1-100. A GAF score between 21-30 represents "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment . . . or inability to function in almost all areas." *Id*. at 34. A score between 31-40 indicates "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id*. A GAF score of 41-50 reflects "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." *Id*.

scheduled appointments. (R. 250-71).

Medical records from James Russell, M.D. have a hand-written entry dated June 29, 2006. (R. 169). The entry is not completely clear, but appears to refer to Parkside and Abilify in June 2005, and the assessment appears to state that there was a history of a diagnosis of ADHD versus bipolar disorder. *Id.* It appears that Dr. Russell prescribed Abilify. *Id.* Similar entries are dated December 14, 2006 and December 6, 2007. (R. 168).

Two Sapulpa special education teachers completed a Social Security Administration teacher questionnaire form dated February 21, 2008. (R. 200-08). They indicated that Holden had no problems in the domains of attending and completing tasks, interacting and relating with others, and moving about and manipulating objects. (R. 203-05). For ten activities within the domain of acquiring and using information, they indicated that Holden had no problem with three activities, a slight problem with one, an obvious problem with five, and a serious problem with one. (R. 202). The teachers found, in the domain of caring for himself, that Holden had an obvious problem with personal hygiene. (R. 206).

The administrative file contains an Oklahoma Department of Mental Health and Substance Abuse Services Treatment Plan from CREOKS dated December 4, 2008. (R. 140-48, 284-92). The treatment plan stated that Holden's admit date was March 23, 2006. (R. 140, 284). It listed his Axis I diagnoses as mixed disturbance of emotions and conduct as adjustment reaction; anxiety states; and family disruption. *Id.* It said that his severity level was moderate, and it scored his current GAF as 48. *Id.* A second treatment plan dated May 27, 2009 had essentially the same diagnoses and GAF scores. (R. 278-83).

The administrative file contains a letter from Dr. Trina Jones dated July 21, 2009 in which she stated that she examined Holden on that date. (R. 295). Her opinion was that Holden

3

was legally blind in his left eye and that this caused in problems with eye-hand coordination and loss of stereopsis. *Id.*

Deborah Hartley, Ph.D., a nonexamining agency consultant, completed a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment dated March 25, 2008. (R. 209-26). On the Psychiatric Review Technique form, Dr. Hartley noted for Listing 12.02 that Holden suffered an organic mental disorder of ADHD. (R. 210). For Listing 12.04, Dr. Hartley wrote that Holden had bipolar disorder. (R. 212). For Listing 12.06, she wrote that Holden had anxiety. (R. 214). For the "Paragraph B Criteria,"[3] Dr. Hartley found that Holden had moderate restriction of his activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace, with no episodes of decompensation. (R. 219). In the "Consultant's Notes" portion of the form, Dr. Hartley summarized Holden's history of problems with school and his mother, and his intake evaluation at Parkside. (R. 221).

For the Mental Residual Functional Capacity Assessment, Dr. Hartley assessed that Holden was markedly limited in his ability to understand, remember, and carry out detailed instructions, and in his ability to interact appropriately with the general public. (R. 223-24). Dr. Hartley wrote that Holden's ability to understand, remember, and carry out detailed instructions, as well as his ability to socially interact, were limited by his ADHD, anxiety, and stress. (R.

---

[3]There are broad categories known as the "Paragraph B Criteria" of the Listing of Impairments used to assess the severity of a mental impairment. The four categories are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") § 12.00C. *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268-69 (10th Cir. 2008).

225).

**Procedural History**

The undersigned did not locate a copy of Holden's application in the administrative record; however, the ALJ's decision states that Holden filed an application for child disability benefits on December 4, 2007, alleging onset of disability beginning April 26, 1999. The application was denied initially and upon reconsideration. (R. 40-44, 50-52). ALJ John Volz conducted a hearing on August 20, 2009 in Tulsa, Oklahoma. (R. 16-37). By decision dated September 4, 2009, the ALJ found that Holden was not disabled. (R. 9-15). On August 17, 2010, the Appeals Council denied review of the ALJ's findings. (R. 1-4). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim.[4] 20 C.F.R. §

---

[4] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four,

5

404.1520. *See also Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id*., *quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214 (quotation omitted).

**Decision of the Administrative Law Judge**

The ALJ found that Holden had not attained age 22 at his alleged onset date of April 26, 1999. (R. 11). At Step One, the ALJ found that Holden had not engaged in any substantial gainful activity since his alleged onset date. *Id*. At Step Two, the ALJ found that Holden had severe

---

where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

impairments of left eye blindness, learning disorder, and ADHD. *Id.* At Step Three, the ALJ found that Holden's impairments did not meet a Listing. (R. 11-12).

The ALJ determined that Holden had the RFC to do "a full range of work that did not require more than the usual amount of eyesight and that did not involve constant reading. The claimant could perform tasks under routine supervision." (R. 12). At Step Four, the ALJ found that Holden had no past relevant work. (R. 14). At Step Five, the ALJ found that there were jobs that Holden could perform, taking into account his age, education, work experience, and RFC. (R. 14-15). Therefore, the ALJ found that Holden was not disabled. (R. 15).

## Review

Holden raises several issues on appeal. Because the undersigned finds that the ALJ erred in his consideration of the opinion evidence of agency consultant Deborah Hartley, Ph.D., this case must be reversed and remanded for further consideration. Because reversal is required by the issue relating to Dr. Hartley's opinion evidence, the other issues raised by Holden are not addressed.

Regarding opinion evidence, generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a nonexamining consultant is given the least weight. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). The regulations of the Social Security Administration require that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 416.927(d); *see also* SSR 96-5p, 1996 WL 374183 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored."). An ALJ must consider the opinion evidence and, if he rejects it, he must provide specific legitimate reasons for the rejection. *Victory v. Barnhart*, 121 Fed. Appx. 819, 825 (10th Cir. 2005) (unpublished), *citing Doyal v. Barnhart*, 331 F.3d 758, 763-64 (10th

Cir. 2003). If an ALJ's RFC determination conflicts with a medical opinion, then the ALJ must explain why the opinion was not adopted. *Sitsler v. Barnhart*, 182 Fed. Appx. 819, 823 (10th Cir. 2006) (unpublished), *citing* SSR 96-8p, 1996 WL 374184; *Ramirez v. Astrue*, 255 Fed. Appx. 327, 332-33 (10th Cir. 2007) (unpublished) (directing ALJ on remand to make specific findings explaining why he did not adopt opinions of consulting examiner).

Even nonexamining consultant opinion evidence must be considered and discussed. *Shubargo v. Barnhart,* 161 Fed. Appx. 748, 753-54 (10th Cir. 2005) (unpublished). In *Shubargo*, there were several nonexamining opinions, and most of them said that the claimant could do light work, but one opinion said that the claimant could only do sedentary work. *Id.* In his RFC determination, the ALJ found that the claimant could do light work, but he did not explain why he rejected the nonexamining opinion that the claimant could only do sedentary work in favor of the other opinions. The Tenth Circuit found that the case had to be remanded to allow the ALJ to make this explanation. *Id. See also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (ALJ's rejection of consulting examiner's opinion evidence by including some restrictions and excluding others required explanation).

In the present case, Dr. Hartley was an agency nonexamining consultant who gave her expert opinion in the form of the Psychiatric Review Technique form and the Mental Residual Functional Capacity Assessment. (R. 209-26). Her opinion was that Holden was markedly limited in his ability to understand, remember, and carry out detailed instructions, and in his ability to interact appropriately with the general public. (R. 223-24). Dr. Hartley wrote that Holden's ability to understand, remember, and carry out detailed instructions, as well as his ability to socially interact, were limited by his ADHD, anxiety, and stress. (R. 225).

The ALJ did not include any limitations in his RFC determination that appear to address

the limitations found by Dr. Hartley. (R. 12). He may have intended his statement that Holden "could perform tasks under routine supervision" to relate in some way to Dr. Hartley's opinion evidence, but if so, he did not include an explanation for how it did. (R. 12). Moreover, the only reference the ALJ made to Dr. Hartley's reports was a fleeting reference that Holden's grades had improved when he took his medication regularly. (R. 14). The ALJ said that he had considered the opinion evidence, but he did not explain why he apparently rejected Dr. Hartley's expert opinion that Holden would have difficulty with detailed instructions and with appropriate interaction. (R. 12). Due to the ALJ's lack of discussion of Dr. Hartley's opinion evidence, and a lack of any explanation for why he did not include all of the restrictions she found when he determined Holden's RFC, this case must be remanded for additional consideration. *Shubargo,* 161 Fed. Appx. at 753-54; SSR 96-5p, 1996 WL 374183 at *6 (ALJs "must address" opinions of nonexamining consultants in their decisions); SSR 96-8p, 1996 WL 374184 at *7.

Because the errors of the ALJ related to the opinion evidence require reversal, the undersigned does not address the remaining contentions of Holden. On remand, the Commissioner should ensure that any new decision sufficiently addresses all issues raised by Holden.

The undersigned emphasizes that "[n]o particular result" is dictated on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

**Conclusion**

Based upon the foregoing, the Court **REVERSES AND REMANDS** the decision of the Commissioner denying disability benefits to Claimant for further proceedings consistent with this Order.

Dated this 23rd day of December, 2011.

Paul J. Cleary
United States Magistrate Judge